**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THERALD WORFORD** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No. 3:04-cv-1903-R** |
| **MONARCH DENTAL ASSOCIATES, L.P.,** | § | |
| **MONARCH DENTAL CORPORATION, &** | § | |
| **MODERN DENTAL PROFESSIONALS,** | § | |
| **P.C.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION</u>

Before the Court are cross-motions for summary judgment. After reviewing the pleadings, the parties' briefing, the parties' submissions, and the applicable law, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt No. 20) and **DENIES** Defendants' Motion for Summary Judgment (Dkt No. 24).

## I. BACKGROUND

Plaintiff Therald Worford sued defendants, Monarch Dental Associates, L.P., Monarch Dental Corporation, and Modern Dental Professionals, P.C. (collectively Monarch), to recover short-term disability benefits that he alleges were wrongfully denied to him under Monarch Dental's Short-Term Income Replacement Plan (the Plan), a self-funded ERISA employee benefit plan.

Worford is a former employee of Modern Dental Professionals, P.C., a Texas professional corporation that employed Worford and the other dentists who worked at the Monarch Dental Centers where Worford worked. Worford was hired as an associate dentist in 1999. On December 1, 2000, he was promoted to the position of District Director and transferred to the Monarch office

1

at 2540 Old Denton Road in Carrollton, Texas, which was the position he held when he ceased

coming to work in September 2002. During Worford's employment with Modern, Worford provided

dental services to patients.

While working at the Carrollton Office, the facility experienced major continuing water

damage. In January 2002, the ceiling collapsed as a result of the leaks in the roof. While repairs were

being done, Worford saw black mold on the ceiling tiles. Later testing confirmed what Worford

suspected – that the office contained mold toxins.  In mid-2002, Worford became sick to the point

that he ceased working to find the cause of his illness.

In October 2002, he submitted a claim for short-term disability benefits under Monarch

Dental's Short-Term Income Replacement Plan. Monarch denied that claim on December 10, 2002.

Worford appealed and Monarch denied his appeal.  Worford then made a claim for long-term

disability.  And on February 14, 2004, Monarch's long-term disability plan found Worford disabled

and granted his long-term disability claim.  Worford then filed this suit on August 13, 2004, to

recover the benefits Monarch continued to deny him under his short-term disability policy.


A.  **The Plan**

At all relevant times, Monarch Dental Corporation funded and maintained the Plan,

providing short-term disability benefits to employees of Monarch and its related companies,

including Modern, Worford's employer. According to Robert James, Monarch Dental Corporation's

Benefits Manager, Monarch contracted with Canada Life Assurance Company "to provide certain

claims administration services."  However, Monarch "retained final discretionary authority to

construe the Plan and to determine if short-term disability benefits would be paid under the Plan."

Canada Life was neither a Plan affiliate nor a source of funding for claims payments. Pursuant to its Administrative Services Agreement with Monarch Dental Corp., Canada Life made claims investigations for Monarch and ***advised*** Monarch of whether the claims should be paid under the terms of the Plan. However, Monarch – Robert James specifically – retained "final decision making authority . . . regarding the approval of claims for short-term disability benefits." After considering Canada Life's advice concerning a claim, Robert James, Monarch's Benefits Manager, would make a decision, relay the decision to Canada Life, and then Canada Life would relay Monarch's decision to the employee. The final decision on whether to grant or deny claims under the Plan remained solely under Monarch's control.

Under the Plan, an employee is eligible for short-term disability benefits only if he is "disabled," which means that he is "not able to perform with reasonable continuity the substantial and material duties of his own occupation in the usual or customary way due to injury, disease, illness, pregnancy, or mental disorder."

### B.  Denial of Worford's Short-Term Disability Claim

In October 2002, Worford submitted a claim for benefits under the Plan. The claim included a form that was completed by Worford's treating physician, Alfred Johnson, D.O. Dr. Johnson made a "primary diagnosis" of "Toxic effects of substance – nonmedicinal– mold & mold toxins," and indicated Worford was suffering from "[m]alaise & fatigue; sleep disturbance; Allergic Rhinitis." Dr. Johnson further indicated that Worford's medical condition affected his ability to work in the following ways: "Memory loss, severe reactions, dizziness, numbness, headaches."

In response, Cathy Sanders, Service Disability Specialist for Canada Life, requested Worford's medical records from Dr. Johnson. The records that were transmitted contained two letters concerning Worford. The first one, dated September 24, 2002, stated in part:

> Mr. Worford has been under my medical care and is found to have had a toxic exposure to mold in the workplace. Laboratory data as well as skin tests show hypersensitivity to mold as well as immune system reaction to mold toxins.
>
> He reports that recently remediation was done in one suite in the office for mold and that other mold has been found. It is my medical opinion and advice that he should not have further exposure in the work place until he can be adequately treated and full remediation completed and verified by indoor air quality measurements.
>
> If you have any further questions, please contact me.

The second letter, dated October 22, stated in relevant part, "Mr. Worford is under my medical care and is found to have had a toxic exposure to mold in the work place. He is currently disabled with the duration of his disability unknown due to continued evaluation and initiation of treatment."

Worford's medical records also indicated that when he sought treatment from Dr. Johnson Worford complained of: lower back pain, fatigue, general malaise, pain in left leg, numbness, coughing, fever, allergies, asthma, dizzy and spacy feeling, eye itching, inflammation of the eye, eye swelling eye tearing, nasal drainage, nasal obstruction rhinitis, sinusitis headaches, sinusitis, sleep apnea, hoarseness, cough, dizziness, memory loss, diarhea, itching - generalized, sleep disturbance, anxiety - excessive worrying. Dr. Johnson noted that, when examined, Worford's balance was unsteady, his tandem gait was abnormal with instability and a tendency to fall, and a Romberg's stability test indicated abnormality.

On the referral form Monarch used to transmit the claim to Canada Life, Monarch noted that "claimant is [out of work] due to toxic effect of mold. States has exposure in the work place. [Worker's Compensation] was denied. Has malaise and fatigue, [sleep] disturbance, allergic rhinitis,

memory loss, dizziness, headaches. . . . Does the medical support total disability from 09-20-02 thru

1/5/03?"

Canada Life's medical staff reviewed the materials received from Dr. Johnson. Specifically,

Dana Popovich, RN, BSN, reviewed the records. Her analysis of Worford's medical records is as

follows:

> I have reviewed Dr. Worford's medical records from Dr. Johnson. Dr. Johnson has
> diagnosed Dr. Worford with an allergic reaction to mold. However, I do not see any
> antihistimine medications prescribed by Dr. Johnson to take care of his [Worford's]
> reaction to the mold. Worford is getting Gluathione injunctions from Dr. Johnson
> and this has nothing to do with his allergy to mold. Gluathion is found in the liver
> tissue and is important for liver function. I'm not sure why Dr. Johnson is giving this
> to Worford and it is unclear in the medical records as to why he is giving it. Why Dr.
> Johnson needs so long to adjust medication and treatment and why he thinks this
> requires time off work is not explained in the records. Many people have allergies
> that are treated and treatments that are changed, all while they continue to work.
> None of the diagnoses: cough, rhinitis and sleep disturbance requires prolonged
> periods out of work. Treatment does not seem geared to relieving symptoms, but to
> discovering cause. This is fine, but treatment of the individual with appropriate
> medications so they can return to work is paramount. At this time I do not see
> objective medical findings that support limited function. [Signed 12/09/02]

The record indicates no attempt to follow up the investigation by contacting Dr. Johnson.

Instead, based on this assessment and review of the medical file, Monarch, specifically Robert

James, decided to deny Worford's claim and relayed that decision to Canada Life. Thus, on

December 10, 2002, Cathy Sanders, Canada Life's Senior Disability Specialist, wrote a letter to

Worford explaining that Worford's claim had been denied. In her letter, Sanders wrote the

following:

> This letter is in regard to your appeal of Short Term Disability benefits. After careful
> review by our medical staff, the medical documentation submitted does not support
> preclusion of all work capacity from any underlying physical condition, including
> allergies to mold. The documentation that was reviewed was [*sic*] the treatment
> notes and lab reports from Dr. Johnson. None of the diagnoses of cough, rhinitis,
> and sleep disturbance require prolonged periods out of work.

The letter also explained Worford's right to appeal.

On February 18, 2003, Worford submitted a letter appealing the claim denial. He enclosed two documents from Dr. Johnson: the letter of October 22, 2002, which was already in his file, and a new letter dated January 20, 2003. In his January 20 letter, Dr. Johnson laid out the chief complaints that Worford presented and said that Worford "continues under my care at this time for treatment of backache, allergic rhinitis due to other allergens, toxic effect molds." He also stated that Worford "continues to be disabled at this time due to his exposure to mold and mycotoxins at his office."

Canada Life again reviewed the claim. Monarch does not make clear in the record what kind of review was actually done. Sanders says she discussed the claim with Mitchell Nudelman, M.D., a doctor with whom Canada Life contracted to review benefit claims. Sanders claims that Dr. Nudelman concluded that Worford should have been able to work despite his allergies to mold. However, Monarch provides no record of Dr. Nudelman's review. There is no affidavit from him, there is no indication that he actually reviewed Worford's medical records, and there is no explanation of the basis for his opinion, according to Sanders, that Worford was not disabled. Sanders discussed her conclusions with Monarch's Benefits Manager, Robert James, who agreed that Worford's claim should be denied. Thus, Canada Life sent a letter to Worford dated May 1, 2003, informing Worford that his appeal had been denied and explained, "Many individuals have allergies that are treated and treatments are changed while they continue to work."

C.      **After Short-Term Disability Claim Denied, Long-Term Disability Granted**

Worford submitted a claim for long-term disability to his Monarch Dental Group policy.  On February 19, 2004, his claim was granted.  The Disability Claims Specialist at The Standard Insurance Company found that the "medical documentation contained in Dr. Worford's claim file including the findings from an independent neuropsychological file review, support that Dr. Worford has been unable to perform the material duties of his Own Occupation as a Dentist . . . ."  Worford's award of long-term disability dated back to December 21, 2002, or 90 days after the onset of his disability – September 20, 2002.

After receiving his long-term disability under his Monarch policy,  Worford filed this lawsuit, alleging that his claim for short-term disability benefits was wrongfully denied, in violation of section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B).

## II. ANALYSIS

Section 502 of ERISA  permits a "participant or beneficiary" of a covered employee benefit plan to file a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §1132(a)(1)(B).  The parties do not dispute that Worford was covered by the Plan or that his claim arises exclusively under ERISA.

### A.  **Standards of Review**

### 1.  Summary Judgment Standard

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed 'to secure just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1).  Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 322; *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Calbillo v. Cavender Oldsmobile,* 288 F.3d 721, 725 (5th Cir. 2002). Where the nonmovant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325.  Once the movant has met its initial burden, the nonmovant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  "If the evidence [proffered by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 2549-50

(1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *See id.* at 255 (1986).

### 2.  Standard of Review of ERISA Benefits Determinations

When reviewing a claim for benefits allegedly due under an ERISA plan, the Supreme Court has held that the denial of benefits is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Further, the Fifth Circuit demands that this Court review any factual determinations made by the administrator under an abuse of discretion standard.  *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir.2004) (citations omitted).

An abuse of discretion occurs where a plan administrator or other fiduciary acts arbitrarily or capriciously.  *See Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc. Med. Benefits Plan*, 168 F.3d 211, 214 (5th Cir. 1999).  "An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir.1996).  Under the abuse of discretion standard, the Fifth Circuit has also created a sliding scale review where a plan administrator is given less deference when there is a conflict of interest – that is, where the plan fiduciary financially gains from each claim denial. *Gooden v. Provident Life & Acc. Ins. Co.,* 250 F.3d 329, 333 (5th Cir. 2001).

The Court's review is limited to the evidence contained in the administrative record.  *Vega v. Nat'l. Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir.1999).  "[T]he administrative record

consists of relevant information made available to the administrator ***prior to the complainant's filing of a lawsuit*** and in a manner that gives the administrator a fair opportunity to consider it." *Id.* (emphasis added). "Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it." *Id.* In its briefing, Monarch claims that according to *Vega* "in reviewing a decision to deny benefits the district court must limit itself to considering the evidence that was before the plan administrator ***when it made the decision***." (Emphasis added.) This conclusion seems more than disingenuous. No fair reading of *Vega* can support such a claim. The district court may consider all evidence the plaintiff provided to the administrator prior to the ***plaintiff's filing of a lawsuit***, not prior to the administrator's denial of the claim.

### B.  Resolution

This case involves a fact question – whether Worford's medical condition rose to the level of a disability. So the court begins with an abuse of discretion standard. *Gooden v. Provident Life & Accidental Ins. Co.,* 250 F.3d 329, 332 (5th Cir. 2001). But the Court must also consider the extent to which Monarch had a conflict of interest in denying the claim. A court's deference to the abuse of discretion standard is modified downward on a "sliding scale" when the plan fiduciary has a conflict of interest. *Id.* at 333; *Vega,* 188 F.3d at 297.

Here, Monarch has a very evident conflict. Monarch funds the Plan, not through purchasing insurance from a third party, but through its own operating expenses.[1] Monarch, therefore, is a

---

[1]The evidence submitted to the Court in conjunction with Monarch's Motion for Summary Judgment do not include any documents that demonstrate how the Plan was funded. However, Robert James's affidavit states, "Benefits under the Plan are paid by Monarch."  And

completely self-interested administrator of the plan.  The fewer claims paid, the higher Monarch's profits.  Therefore, based on Monarch's conflict of interest, the Court will apply a less deferential standard of review than abuse of discretion but more deferential than *de novo*.

### 1.   The plan administrator cherry picked Dr. Johnson's records to deny disability.

Monarch's decision to deny short-term disability benefits to Worford was an abuse of discretion.  Monarch contracted with Canada Life to investigate short-term disability claims under the plan.  When originally presenting the claim to Canada Life, Worford's treating physician, Alfred Johnson, D.O., completed a form indicating a "primary diagnosis" of "Toxic effects of substance – nonmedicinal – mold & mold toxins," and indicated Worford was suffering from "[m]alaise & fatigue; sleep disturbance; Allergic Rhinitis." Dr. Johnson further indicated that Worford's medical condition affected his ability to work in the following ways: "Memory loss, severe reactions, dizziness, numbness, headaches."  Worford's medical records indicate that when he sought treatment from Dr. Johnson he complained of: lower back pain, fatigue, general malaise, pain in left leg, numbness, coughing, fever, allergies, asthma, dizzy and spacy feeling, eye itching, inflammation of the eye, eye swelling, eye tearing, nasal drainage, nasal obstruction rhinitis, sinusitis headaches, sinusitis, sleep apnea, hoarseness, cough, dizziness, memory loss, diarhea, itching - generalized, sleep disturbance, anxiety - excessive worrying.  In the medical records, Dr. Johnson noted that when he examined Worford, Worford's balance was unsteady, his tandem gait was abnormal with instability and a tendency to fall, and a Romberg's stability test indicated abnormality.

---

"Monarch . . . retained final discretionary authority to construe the Plan and to determine if short-term disability benefits would be paid under the plan."

When Monarch referred the claim to Canada Life, Monarch noted that "claimant is [out of work] due to toxic effect of mold.  States has exposure in the work place. [Worker's Compensation] was denied.  Has malaise and fatigue, [sleep] disturbance, allergic rhinitis, memory loss, dizziness, headaches. . . . Does the medical support total disability from 09-20-02 thru 1/5/03?"

However, when an RN from Canada Life reviewed Worford's medical records, she ignored most of Worford's symptoms, noting only that "[n]one of the diagnoses: cough, rhinitis and sleep disturbance requires prolonged periods out of work."  And Canada Life's letter to Worford indicated that the basis for denial was:

> [T]he medical documentation submitted does not support preclusion of all work capacity from any underlying physical condition, including allergies to mold.  The documentation that was reviewed was [*sic*] the treatment notes and lab reports from Dr. Johnson.  ***None of the diagnoses of cough, rhinitis, and sleep disturbance*** require prolonged periods out of work.

(Emphasis added).

Monarch chose three of Worford's symptoms – cough, rhinitis, and sleep disturbance – and based the decision to deny Worford's claim as if Worford suffered ***only*** from those three symptoms. Monarch and Canada Life ignored the more disturbing of Worford's symptoms – malaise and fatigue, memory loss, dizziness, headaches, pain in left leg, numbness, coughing, fever, dizzy and spacy feeling, eye itching, inflammation of the eye, eye swelling eye tearing, unsteady balance, abnormal tandem gait with instability and a tendency to fall. There is no explanation anywhere in the record why Monarch and Canada Life chose to ignore not only ***most*** of Worford's symptoms, but also the most dangerous symptoms for a dentist wielding a high-speed drill on a daily basis.

Fittingly, in oral argument before the Court, Monarch's attorney argued that a cough, a runny nose and a lack of sleep does not amount to a disability. Of course, this is a gross misreading of the medical records.   Monarch has attempted to cherry pick three symptoms out of a myriad of

symptoms and ignore the rest.  And Canada Life and Monarch picked three of the minor symptoms, symptoms most people suffer and still manage to perform their jobs.

However, Worford suffered more than those three symptoms, and he has no ordinary job. Worford is a highly skilled dentist who operates dangerous equipment that can seriously injury his patients. According to the medical records, he suffered from dizziness, instability, memory loss, numbness, headaches, eye itching, eye inflammation, and eye swelling and tearing – all symptoms that would be dangerous to the patients he cared for. Because neither Canada Life nor Monarch addressed any of these symptoms in either the initial denial of Worford's claim or on appeal, Monarch abused its discretion in denying Worford's claim.

Further, neither Canada Life nor Monarch made any reference to Worford's job duties.  Any decision whether a claimant is "disabled" under Monarch's short-term disability plan requires assessment of the claimants ability "to perform with reasonable continuity the ***substantial and material duties of his own occupation*** in the usual or customary way."   (Emphasis added.) Monarch abused its discretion when it denied Worford's claim without any evidence that it considered what job duties Worford performed and how they were affected.

Finally, the record contains no explanation why Canada Life and Monarch completely ignored most of Worford's symptoms.  This lack of explanation rises to an abuse of discretion.  An abuse of discretion occurs when a "decision is made without a rational connection between the known facts and the decision."  *See Bellaire Gen. Hosp.,* 97 F.3d at 828.  Because Monarch failed to even address the known facts in denying Worford's claim – that Worford suffered from dizziness, memory loss, numbness, fever, dizzy and spacy feeling, eye itching, inflammation of the

eye, eye swelling, eye tearing, constant itching, unsteady balance, tendency to fall – Monarch abused its discretion.

Although this Court finds that Monarch abused its discretion in denying Worford's claim under the most deferential abuse of discretion standard, the Court notes that two other factors weigh against the reasonableness of Monarch's decision.  First, Monarch used nurses, as opposed to medical doctors to review the claim and a non-medial administrator to make the final determination to deny the claim.  Second, when Worford later claimed long-term disability under his Monarch disability plan, the benefits were granted.

### 3.  <u>Other Consideration – Review by an RN</u>

A plan administrator's decision is given less deference on the sliding scale if the plan administrator used nurses, rather then doctors to review and make final recommendations regarding the payment of claims.  *Sweatman v. Comm. Union Ins. Co.,* 39 F.3d 594 (5th Cir. 1994); *Gellerman,* 376 F. Supp. 2d at 735.  Further, the plan fiduciary here – that is, the final decision maker  – is not a medical professional at all.  And when denying the claim, Monarch relied on advice from an RN while disregarding Worford's treating physician. *See Gellerman,* 376 F. Supp. 2d at 735. ("That is not to say that an administrator automatically abuses its discretion if it relies on a nurse, but rather that when an administrator relies on nurses to override highly trained physicians, the court should decrease the level of deference afforded the administrator.").

14

**4.  Other Considerations – Grant of Long-Term Disability**

The Court may consider a claimant's long-term disability award when assessing the reasonableness of the plan administrator's decision denying the claimant's short-term disability. *See, e.g., id.* (finding a determination of disability by the Social Security Administration relevant in assessing the reasonableness of the defendant's denial of long-term disability).   Monarch's later determination that Worford was disabled under his long-term disability policy is not binding on the outcome of Worford's short-term disability claim, but it is relevant in assessing the reasonableness of Monarch's denial.  This is especially true because Monarch was the source of both plans. Further, the determination to grant Worford long-term disability was made ***before*** Worford filed suit to recover his short-term disability.  Therefore, under the *Vega* principle – that the administrative record consists of anything available to the plan administrator prior to a claimant filing suit – the grant of long-term disability becomes something the Court could consider in assessing the reasonableness of Monarch's denial of short-term disability.  Monarch sponsored both the long-term and short-term disability plans, and Worford was found disabled under the long-term plan as of September 20, 2002.


**5.  Proper Parties**

All Defendants argue that their Motion for Summary Judgment should be granted because Worford has sued the wrong parties.  The Court finds this argument unfounded in law and unsupported in logic or evidence. Defendant's claim that under ERISA a suit can be maintained only against the Plan itself and that none of the Defendants is the Plan.  However, the cases Defendants cite do not support this proposition.

15

The Court does agree that not all Defendants are liable under ERISA.  Instead, the entity

that serves as the Plan sponsor, the Plan fiduciary, the entity with the final discretionary

authority to determine the ultimate payment or denial of benefits is the Plan.  Therefore,

according to Robert James's affidavit, Monarch Dental Corporation is the proper defendant.

And the Court grants summary judgment for Defendants Monarch Dental Associates, L.P. and

Modern Dental Professionals, P.C.


**6. <u>Attorney Fees</u>**

This Court finds that Worford is entitled to an award of reasonable attorney fees.  In

deciding whether to award attorney fees in an ERISA action, the court should consider such

factors as (1) degree of opposing parties' culpability or bad faith, (2) ability of opposing parties

to satisfy award of attorney fees, (3) whether award of attorney fees against opposing parties

would deter other persons acting under similar circumstances, (4) whether parties requesting

attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve

significant legal question regarding ERISA itself, and (5) the relative merits of parties' positions.

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).  In deciding whether

to award attorney fees in an ERISA suit, courts should consider the five *Bowen* factors, without

giving predominance or preclusive effect to any one of them, and should also consider any

relevant non-*Bowen* factors. *Riley v. Admin. of Supersaver 401K Capital Accumulation Plan for*

*Employees of Participating AMR Corp. Subsidiaries,* 209 F.3d 780, 782 (5th Cir. 2000).

In awarding attorney's fees to Worford, the Court relies on the following factors.

Worford was awarded long-term disability under Monarch's long-term disability plan well

16

before Worford filed suit in this case.  Although Monarch was given ample time to pay Worford his short-term benefits, Monarch refused to do so, erroneously arguing in this suit that only the materials Worford submitted prior to the denial of his claim for short-term benefits were relevant to the determination.  Instead, *Vega* allows a claimant to supplement the administrative record until the time suit is filed in order to encourage settlement of claims like these.

Nothing in the record indicates that Monarch is unable to pay an award of attorney fees.  In awarding attorney fees to Worford, the Court believes that it will deter Monarch and other litigants from refusing to comply with the letter and spirit of *Vega*, which advocates that claimants continue to provide Plan Administrators or fiduciaries with evidence to settle the claim rather than rushing to the federal courthouse.  Of course, when a Plan Administrator refuses to consider the later-supplied evidence, then the purpose *Vega*'s broad interpretation of the administrative record is thwarted.

Further, Monarch demonstrated in this case, the need for an attorney fees award.  As counsel for Worford persuasively argued before this Court, without the award of attorney fees, Monarch has absolutely no incentive to settle Worford's short-term disability claim.  Without the liability for attorney fees, Monarch merely becomes liable for the amount it should have paid Worford prior to this suit's filing, or about $26,000.  Worford's costs and attorney fees have now surpassed that amount.  Therefore, a win for Worford without an award of attorney fees would actually be a net loss to him.

Finally, this Court finds little merit in Monarch's legal claims.  The record makes clear that even under the most permissive abuse of discretion standard, Monarch abused that discretion when it ignored most of the medical evidence presented by Dr. Johnson, Worford's treating

physician. Monarch's only defense seemed to be a misrepresentation of *Vega* and an unsupported argument that Worford sued the wrong party.  And even when the record contains a myriad of symptoms from which Worford suffered, counsel for Monarch ignored them all and argued before this Court that Worford's claim boiled down to a runny nose, cough and trouble sleeping – a claim that blatantly misconstrues the record.

Based on these factors, the Court finds that Worford is entitled to all his attorney fees.

## III.  CONCLUSION

For these reasons, the Court **DENIES** Defendant Monarch Dental Corporation's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment against Monarch Dental Corporation. Summary judgment is granted in favor of Monarch Dental Associates, L.P. and Modern Dental Professionals, P.C.  Worford shall recover short-term disability benefits from September 20, 2002, through December 20, 2002, pursuant to the Plan, plus pre- and post-judgment interest. Worford shall also recover attorney fees.  Worford shall file a request for attorney fees, with supporting documentation, by April 13, 2007.  Defendants may reply to the request no later than April 20, 2007.

It is so **ORDERED.**

**ENTERED:   March 21, 2007.**

_____
**HON. JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**

18